UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**DIANA PEREZ,**

    **Plaintiff,**

**v.**                                                                   **Case No: 5:14-cv-379-Oc-34PRL**

**COUNTRY MUTUAL INSURANCE COMPANY**

    **Defendant.**

## REPORT AND RECOMMENDATION[1]

Before the Court is Defendant's motion to exclude certain portions of the expert testimony of Sunil Gulati P.E., of Florida Testing & Environmental, Inc., an engineer. (Doc. 33). At issue in this evidentiary dispute are certain methodologies Gulati used to determine whether sinkhole activity existed at Plaintiff's residence. For the reasons that follow, I recommend that the motion be denied in its entirety.

### I.   BACKGROUND

This is first-party insurance coverage case. (Doc. 7). On October 15, 2009, Defendant issued Plaintiff a property insurance policy on her primary residence in Belleview, Florida. Plaintiff alleges that her primary residence has suffered structural damage and that the policy at issue covers the damage.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

- 2 -

Defendant denied her claim based, *inter alia*, upon the findings of SDII Global. (Doc. 7, Ex. 3). SDII Global is a geotechnical engineering firm who found that sinkhole activity does not exist at Plaintiff's property. (Doc. 36, Ex. 1). In contrast, Gulati concluded that sinkhole activity does exist there. (Doc. 33, Ex. 1, p. 4). On March 14, 2016, Defendant deposed Gulati regarding his conclusions (Doc. 33, Ex. 2) and subsequently filed the instant motion (Doc. 33), to which Plaintiff has responded (Doc. 36).

**II.   STANDARD**

A trial court's discretionary choice to admit expert evidence is governed by Federal Rule of Evidence 702, as explained by *Daubert* and its progeny.[2] *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Under Rule 702 and *Daubert*, expert testimony is admissible if (1) the expert is qualified to testify competently, (2) the expert has used sufficiently reliable methodology in reaching a conclusion, and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rink*, 400 F.3d at 1291–92.

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Still, competent experts frequently reach differing opinions. "Merely because two qualified experts reach directly opposite conclusions using similar, if not identical, data bases or disagree over which data to use or the manner in which the data should be evaluated, does not necessarily mean that, under *Daubert*, one opinion is *per se* unreliable. *Allapattah Servs, Inc., et al, v. Exxon Corp.*, 61 F. Supp. 2d 1335, 1340–41 (S. D. Fla. 1999).

---

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

A trial court, in its discretion, must decide whether an evidentiary hearing is necessary to determine the reliability of evidence. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Where, as here, "the parties' reciprocal submissions are sufficient to enable the court to resolve the reliability issue without taking live testimony," an evidentiary hearing is unnecessary. *United States v. Frazier*, 387 F.3d 1244, 1274 (11th Cir. 2004).

### III. DISCUSSION

Gulati and Defendant (formerly known as Cotton States Mutual Insurance Company) are not strangers to this Court. In a previous action, this Court denied Defendant's motion to exclude Gulati as an expert and found that (1) Gulati was a qualified expert regarding soil classification, and (2) that his soil classification methodology was sufficiently reliable. *Foster v. Cotton States Mutual Insurance Company*, 5:12-cv-150-Oc-34PRL, Doc. 50, 52 (M.D. Fla. Oct. 2, 2013).

In this action, Defendant asserts that methodologies Gulati used—to determine whether sinkhole activity existed as the subject property—are speculative, not based on sufficient facts or data, and are unreliable. Specifically, Gulati (1) examined a map, published by the Florida Geological Survey, to determine whether there were any "closed depressions" within one mile of the subject residence, and (2) referred to the mechanism of gravitational compaction and the principal of lateral continuity (i.e., the law of original horizontality). (Doc. 33, Ex. 1, p. 11 and Doc. 36, Ex. 2, pp. 61–63). During his deposition, Gulati clarified that, under the mechanism of gravitational compaction, "soil-sediment get[s] harder and denser at depth" under normal conditions due to "[g]ravity working on the soil-sediments." (Doc. 33, Ex. 2. pp. 26–28, 61). And, under the principal of lateral continuity, "soil-sediment always gets deposited in horizontal layers" and is "continuous over a large lateral extent." (Doc. 33, Ex. 2. pp. 61, 62–63).

As an initial matter, while Defendant asserts that Gulati's own deposition testimony undermines the reliability of these methodologies, Defendant's motion omits—and does not challenge—pertinent portions of Gulati's deposition testimony. In those omitted portions, Gulati notes two publications on gravitational compaction and that two other professionals (including Defendant's own expert Sam Upchurch, Ph.D., P.G., of SDII Global) use the term "original horizontality." (Doc. 33, Ex. 2, pp. 62–63 and Doc. 36, Ex. 1).

In any event, Defendant's *own* expert, SDII Global, applied the very methodologies at issue here, but simply reached different conclusions than Gulati—i.e., this evidentiary dispute is, in actuality, a mere disagreement among experts.

For instance, SDII Global reviewed data on the local soil and geologic strata, took soil samples, and performed Standard Penetration Tests (SPT).[3] (Doc. 36, Ex. 1, pp. 9–10, 13–14). Both Gulati and SDII Global reviewed the SPT data, which—according to SDII Global—measures the relative strength (or bearing capacity) of soils. (Doc. 33. Ex. 2, pp. 8–9, 11 and Doc. 36, Ex. 1, pp. 7, 13–14, 41). SDII Global concludes that the SPT data indicates that no sinkhole activity existed at the subject site. But according to Gulati, the SPT data shows that some of the soil tested did not get harder and denser with depth (i.e., normal gravitational compaction was not entirely present at the site), thus indicating the presence of sinkhole activity. (Doc. 33, Ex. 2, pp. 26–27, 56–57). Yet, a disagreement over the interpretation of data does not render a methodology—used by both experts—unreliable. *See Allapattah Servs, Inc.*, 61 F. Supp. 2d at 1340–41.

---

[3] According to SDII Global, "[t]he Standard Penetration Test (SPT) is the most widely used method for testing the strength (bearing capacity) of a soil. SPT is a standard method that involves driving a split spoon sampler into the soil by dropping a 140 lb. hammer 30 inches onto an anvil connected to the drill string. The number of hammer blows required to drive the spoon in 6-inch increments is counted (these are termed blow counts)." (Doc. 36, Ex. 1, p. 32).

As further example, SDII Global concludes that "[t]he *lateral continuity* of strata across the project site indicates that the original stratigraphic configuration has not been disturbed by sinkhole activity." (Doc. 36, Ex.1, p. 14) (emphasis added). This conclusion directly contradicts Gulati's opinion that the lateral continuity had been violated at the site, but, here again, this disagreement is not a reason to exclude from evidence the principal of lateral continuity—a principal that Defendant's own expert utilized.

Further, SDII Global, to determine whether sinkholes activity existed within a mile of the subject residence, reviewed topological data and aerial photographs for the existence of closed depressions. (Doc. 36, Ex. 1, pp. 9–10). After this review, SDII Global concluded that the existence of closed depressions do not necessarily indicate *current* sinkhole activity. (Doc. 36, Ex. 1, p. 10). Gulati considered similar data, but concluded that the data might indicate active sinkholes. (Doc. 33, Ex. 2, pp. 59–60 and Doc. 36, Ex. 2, p. 11). Yet again, different interpretations based on a similar methodology.

Finally, the Florida Geological Survey's Special Publication 57, published by Florida's Department of Environmental Protection, addresses "Geological and Geotechnical Investigation Procedures For Evaluation of the Causes of Subsidence Damages in Florida."[4] The publication recommends that professionals conducting subsidence investigations both (1) review historic data to determine whether features that may represent sinkholes are present near the subject property and (2) familiarize themselves with local soil conditions and local strata. (Doc. 36, Ex. 3, p. 14–15). Thus, in reviewing data of other local sinkhole activity and possible deviations from normal

---

[4] Special Publication 57 "is a consensus compilation from twenty six professionals" to "assist the insurance industry, geologic and geotechnical consultants, government agencies, property owners, and the public, in providing a template for sinkhole investigation protocols." (Doc. 36, Ex. 3, p. 5).

soil and strata conditions, Gulati and SDII Global conformed to the recommendations of the Florida Geological Survey.

For the reasons stated above, the Court finds Defendant's *Daubert* objections to Mr. Gulati's methodologies unpersuasive.

## IV. RECOMMENDATION

Accordingly, it is respectfully **RECOMMENDED** that Defendant's Motion to Exclude Certain Expert Testimony of Mr. Gulati (Doc. 33) be **DENIED**.

**DONE** and **RECOMMENDED** in Ocala, Florida on May 4, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties